NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYS INNS WORLDWIDE, INC., <br><br> Plaintiff, <br><br> v. <br><br> MATAJI3 CORPORATION, *et al.*, <br><br> Defendants. | No. 23cv2985 (EP) (LDW) <br><br> OPINION |

**PADIN, District Judge.**

Plaintiff Days Inns Worldwide, Inc. ("Plaintiff" or "DIW"), a hotel franchisor, alleges that Defendants Mataji3 Corporation ("Mataji3"), Shreepal Patel ("S. Patel"), and Arvindkumar Patel ("A. Patel") (collectively, "Defendants") breached franchise agreements and related guaranty agreements. D.E. 19 ("Amended Complaint" or "Am. Compl."). Defendants have not appeared. Plaintiff now moves for default judgement against Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2). D.E. 29 ("Motion" or "Mot."). This Motion is decided without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons that follow, the Court will **GRANT** DIW's Motion.

I.   **BACKGROUND**

   A.   **Factual Background**[1]

On August 30, 2018, DIW entered into a franchise agreement with Mataji3 for the operation of an 84-room Days Inn guest lodging facility located at 3651 I-75 Business Spur, Sault

---

[1] "Where a court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

Saint Marie, Michigan 49783 (the "Facility"). D.E. 29-4 ("Mallet Aff.") ¶ 3; *id.*, Ex. A (the "Franchise Agreement").[2]

The same day, DIW and Mataji3 entered into a SynXis Subscription Agreement, which governed Mataji3's access to and use of certain computer programs, applications, features, and services, as well as any and all modifications, corrections, updates, and enhancements to the same. *Id.* ¶ 4; *id.*, Ex. B (the "SynXis Agreement").

Under the Franchise Agreement, Mataji3 was required to operate a Days Inn guest lodging facility for a fifteen-year term. *Id.* ¶ 5; Franchise Agreement at 21.[3] In operating the Facility, Mataji3 was required to make periodic payments to DIW for royalties, system assessments, taxes, interest, SynXis Fees, and other fees, (the "Recurring Fees"). Mallet Aff. ¶ 6; Franchise Agreement at 21-22, 46-48; SynXis Agreement at 56-57. Defendants were also required to prepare and submit monthly reports to DIW disclosing, among other things, the amount of gross revenue earned at the Facility. Mallet Aff. ¶ 8; Franchise Agreement at 14. Additionally, Defendants were required to maintain accurate financial information relating to the gross revenue of the Facility. Mallet Aff. ¶ 9; Franchise Agreement at 13-14. Lastly, Defendants were required to allow DIW to examine, audit, and make copies of said financial information. Mallet Aff. ¶ 9; Franchise Agreement at 20. Interest was to be paid "on any past due amount payable to [DIW] . . . at the rate of 1.5% per month . . . accruing from the due date until the amount is paid." Franchise Agreement at 22.

---

[2] The signature and notary seal were obscured in the original version of the Mallet Aff. The Court therefore required that a new version be filed with the signature and notary seal visible. D.E. 31. The Court refers to the original Mallet Aff. as the original filing contains the referenced exhibits.

[3] For ease of reference, the Court uses the page ID number listed at the top of the document.

2

The Franchise Agreement permitted DIW to terminate the Agreement, with notice to Mataji3, if Mataji3: (a) discontinued operating the Facility as a Days Inn guest lodging establishment and/or (b) lost possession or the right to possess the Facility. Mallet Aff. ¶ 10; Franchise Agreement at 26. In the event of a termination, the Franchise Agreement required Mataji3 to pay liquidated damages to DIW in accordance with a specified formula. Mallet Aff. ¶ 11; Franchise Agreement at 28.

S. Patel and A. Patel guaranteed Mataji3's obligations under the Franchise Agreement to DIW. Mallet Aff. ¶ 13; *id.*, Ex. C (the "Guaranty"). Under the terms of the Guaranty, S. Patel and A. Patel agreed, among other things, to "immediately make each payment and perform or cause [Mataji3] to perform, each unpaid or unperformed obligation of [Mataji3] under the [Franchise] Agreement." Mallet Aff. ¶ 14; Guaranty.

Plaintiff prepared an itemized statement setting forth the amount of outstanding fees owed. Mallet Aff., Ex. J. (the "Itemized Statement"). The Itemized Statement shows the first unpaid invoice with a date of February 2019. However, the invoice attached to the May 6, 2019 letter to Mataji3, the first notification to Mataji3 that it was in Default, is dated September 2018. Mallet Aff., Ex. D. The Court takes this to mean that the debt from September 2018 through January 2019 was cured, and thus the violation of the Franchise Agreement should be seen as beginning in February 2019.

Mataji3 failed to pay various Recurring Fees to DIW, in breach of its obligations under the Franchise Agreement. Mallet Aff. ¶ 16; Itemized Statement. DIW advised Mataji3 of these defaults by letters dated May 6, 2019; November 13, 2019; February 14, 2020; December 8, 2021; May 17, 2023. Mallet Aff. ¶¶ 17-20; *id.*, Exs. D-H.

3

On October 18, 2023, Mataji3 unilaterally terminated the Franchise Agreement when it lost possession of the Facility to a third party without DIW's prior consent, in breach of its obligations under the Franchise Agreement. *Id.* ¶¶ 10, 22; Franchise Agreement at 26.

By letter dated November 30, 2023, DIW acknowledged Mataji3's unilateral termination of the Franchise Agreement effective October 19, 2023, and advised Mataji3 that it was required to pay to DIW $168,000 in liquidated damages for premature termination, along with outstanding Recurring Fees totaling approximately $641,747.96. Mallet Aff. ¶ 23; *id.*, Ex. I.

B. **Procedural Background**

On May 31, 2023, Plaintiff filed the original Complaint. D.E. 1. On May 10, 2024, Plaintiff filed a motion to amend the Complaint, D.E. 17, which was granted on June 7, 2024. D.E. 18.

On June 12, 2024, Plaintiff filed the Amended Complaint. Am. Compl. S. Patel was served with the Summons and Amended Complaint on July 1, 2024. D.E. 23. A. Patel, both in his individual capacity and as a representative for Mataji3 Corporation, was served with the Summons and Amended Complaint on July 15, 2024. D.E. 24. Defendants failed to answer or otherwise respond to the Amended Complaint.

Plaintiff submitted a Request for Entry of Default on August 20, 2024, which the Clerk entered the next day. D.E. 13. Thereafter, on October 11, 2024, Plaintiff filed this Motion. Mot. To date, Defendants have not appeared in this case.

II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 55 allows for the entry of default judgment against a party that fails to plead or otherwise defend against claims. Fed. R. Civ. P. 55(b)(2). Although the Court has discretion in granting default judgement, the Third Circuit has emphasized that such discretion

4

is "not without limits" and has repeatedly stated its "preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).

Before granting default judgment, the Court must determine whether: (1) it has subject matter jurisdiction over the claims at issue and personal jurisdiction over the defendant; (2) the defendant was properly served; (3) the complaint states a sufficient cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. HH Pramukh, LLC*, No. 15-4318, 2016 WL 7231598, at *1 (D.N.J. Dec. 14, 2016) (citations omitted).

Additionally, a court must determine the appropriateness of default judgment by considering: (1) prejudice to the plaintiff if the default judgment is denied; (2) whether the defendant has a viable defense; and (3) whether the defendant is culpable for their delay. *Id.*

By virtue of the defendant's default, the Court should accept as true all well-pleaded factual allegations in the complaint, except for those allegations pertaining to damages, which the plaintiff must prove. *Comdyne I*, 908 F.2d at 1149.

III.   ANALYSIS

   A.   The Court Has Subject Matter Jurisdiction and Personal Jurisdiction

To establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), "the party ascertaining jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000.00." *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010). For purposes of analyzing diversity jurisdiction, "[a] corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir.

5

2015). "A natural person is deemed to be a citizen of the state where he [or she] is domiciled." *Id.*

The threshold requirements of diversity subject matter jurisdiction are met in this case. The amount of controversy is above $75,000, Compl. ¶ 5, and there is complete diversity of citizenship.[4] *See* 28 U.S.C. § 1332.

Defendants may consent to personal jurisdiction by executing a valid forum selection clause. *See Ins. Corp. of Ireland Ltd. v. Compagnie des Bauxities de Guinee*, 546 U.S. 694, 703-04 (1982). In diversity cases, federal law governs the effect given to a forum selection clause. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995). A forum selection clause is "prima facie valid" and is enforceable unless it is "unjust or unreasonable." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).

Here, the Court has personal jurisdiction over Mataji3 pursuant to a valid forum selection clause in the Franchise Agreement, which stipulates "to the non-exclusive personal jurisdiction of and venue . . . the United States District Court for the District of New Jersey." *See* Franchise Agreement at 26. The Court also has personal jurisdiction over S. Patel and A. Patel due to a valid forum selection clause in the Guaranty, which binds them to the same jurisdictional stipulation. *See* Guaranty.

**B.    Service Was Proper**

Federal Rule of Civil Procedure 4(e) provides four methods for effecting service in a district court: (1) serving the defendant in accordance with the state laws where the district court sits or where service is made; (2) personal service upon the individual; (3) leaving a copy at the

---

[4] DIW is a Delaware corporation with its principal place of business in New Jersey. Am. Compl. ¶ 1. Mataji3 is a Michigan corporation with its principal place of business also in Michigan. *Id.* ¶ 2. S. Patel is a citizen of Michigan. *Id.* ¶ 3. A. Patel is a citizen of Michigan. *Id.* ¶ 4.

individual's dwelling or place of abode with someone of a suitable age who resides there; or (4) delivering the summons and complaint to the party's legal agent. Fed. R. Civ. P. 4(e). Further, under Federal Rule of Civil Procedure 4(h)(1)(A), a limited liability company may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."

Service of the Summons and Amended Complaint was effectuated by personal service for S. Patel in Marshfield, Wisconsin on July 1, 2024. D.E. 23. A. Patel, both in his individual capacity and as a representative for Mataji3 Corporation, was personally served with the Summons and Amended Complaint in Sault Saint Marie, Michigan on July 15, 2024. D.E. 24. Since Defendants were personally served pursuant to Fed. R. Civ. P. 4(e)(1), there is sufficient proof of service as to all Defendants.

### C.     Plaintiff Adequately Alleges a Breach of Contract

Plaintiff alleges a straightforward breach of contract claim. "To state a claim for breach of contract, [the plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

Plaintiff has adequately asserted all four elements. Defendants entered valid contracts with DIW. Am. Compl. ¶¶ 9-21. Mataji3 unilaterally terminated the Franchise Agreement when it lost possession of the Facility to a third party without DIW's prior consent, and breached the Franchise Agreement when it failed to pay liquidated damages and outstanding Recurring Fees through the date of termination. *Id.* ¶¶ 23-29. Under the Guaranty, S. Patel and A. Patel are obligated to pay liquidated damages and outstanding Recurring Fees, but have failed to perform those obligations. *Id.*; *see* Guaranty; *see also Travelodge Hotels, Inc. v. Huber Hotels, LLC,* No. 19-20571, 2022 WL 44634, at *6 (D.N.J. Jan. 5, 2022) (noting that a guaranty is a contract) (citation omitted).

7

Furthermore, DIW has satisfied all its obligations under the Franchise Agreement. Am. Compl. ¶ 30.

### D.     Plaintiff is Entitled to Default Judgment

Having determined that Plaintiff states a valid cause of action against Defendants, the Court next considers whether default judgment is appropriate by making explicit findings regarding the following factors: (1) whether the defendant has a viable defense; (2) whether the plaintiff would suffer prejudice if the default judgment is denied; and (3) whether the defendant is culpable for their delay. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Here, the Court finds that all factors weigh in favor of granting default judgment, and, therefore, default judgment is appropriate.

#### 1.     *There is no evidence that Defendants have a meritorious defense*

"[A] defendant has established a meritorious defense when its 'allegations, if established at trial, would constitute a complete defense.'" *Mrs. Ressler's Food Prod. v. KZY Logistics LLC*, 675 Fed. App'x 136, 140 (3d. Cir. 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Because Defendants failed to respond or answer the Complaint, there is nothing in the record to suggest that Defendants have a meritorious defense. *See Trs. of Int'l Union v. Rocon, Inc.*, No. 21-8534, 2022 WL 225384, at *4 (D.N.J. Jan. 26, 2022). Accordingly, this factor weighs in favor of granting default judgment.

#### 2.     *DIW is prejudiced without default judgment*

For a plaintiff to be prejudiced by a defendant's default, a plaintiff must show that "its ability to pursue the claim has been hindered since the entry of the default judgment." *Feliciano*

*v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 657 (3d Cir. 1982). Any potential prejudice must "be viewed in the context of [the defendant's] failure over an extended period of time" to cure the default. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1882 (3d Cir. 1984).

S. Patel's time to answer or otherwise respond to the Complaint expired on July 22, 2024. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). A. Patel and Mataji3's time to answer or otherwise respond to the Complaint expired on August 5, 2024. *Id.* Defendants' failure to participate in this case has obstructed DIW's ability to pursue relief, and without a default judgment, DIW has no other means of obtaining redress for the alleged harm. Accordingly, the prejudice factor weighs in favor of granting default judgment.

### 3. Defendants' conduct is culpable

For default judgment purposes, culpability does not require intentional and malicious actions on the part of the non-movant, but merely "[r]eckless disregard for repeated communications from plaintiffs and the court." *Hritz*, 732 F.2d at 1183. "[C]ulpable conduct means actions taken willfully or in bad faith, and such bad faith may be presumed where a defendant fails to respond to a complaint and offers no reason for its failure to engage in the action." *Gayeman v. Cannon*, No. 14-1518, 2016 WL 6834109, at *2 (E.D. Pa. Nov. 21, 2016); *see also Slover v. Live Universee, Inc.*, No. 8-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) ("Defendant is [] presumed culpable where it has failed to answer, move, or otherwise respond.") (citation omitted); *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,* 175 F.App'x 519, 523 (3d Cir. 2006) (holding that a defendant's failure to respond to communications from the plaintiff and the court can constitute culpability).

At the time of this decision, more than eight months have passed since the Amended Complaint was filed without an answer. Accordingly, the culpability factor weighs in favor of default judgment.

### E. Plaintiff is Entitled to Damages

DIW asks for the total amount of $907,055.22 comprising (a) $709.892.02 for outstanding Recurring Fees, inclusive of prejudgment interest, and (b) $197,163.20 for liquidated damages, inclusive of interest. Mot. At 7. Having reviewed the evidence DIW provides in support of its damages claim, the Court is satisfied that DIW is entitled to the claimed damages. *See Comdyne I*, 908 F.2d at 1149 (holding that the plaintiff must prove its damages allegations).

#### 1.     *Outstanding recurring fees*

DIW seeks outstanding Recurring Fees in the amount of $709.892.02, inclusive of interest (1.5% monthly). Mot. at 6-7; Franchise Agreement at 22; *see also* Itemized Statement. The Court is satisfied that the Itemized Statement demonstrates entitlement to that amount.

#### 2.     *Liquidated damages*

Pursuant to section 12.1 of the Franchise Agreement, Mataji3 agreed that, in the event of a termination of the Franchise Agreement pursuant to section 11.2, it would pay liquidated damages to DIW accordance with a formula in the Franchise Agreement. Franchise Agreement at 28. Section 12.1 of the Franchise Agreement specifically set liquidated damages for the Facility at $2,000.00 per the number of guest rooms at the Facility Mataji3 was authorized to operate pursuant to the Franchise Agreement. Mallet Aff. ¶ 31; see Franchise Agreement at 28. At the time of termination, Mataji3 was authorized to operate 84 guest rooms at the Facility. Mallet Aff. ¶ 32. Accordingly, DIW seeks $168,000.00 in liquidated damages that became due because of Mataji3's premature termination of the Franchise Agreement. *Id*; see Franchise Agreement at 28.

DIW asserts that the liquidated damages should be calculated at the legal rate of interest of 1.5% per month in the amount of $29,163.20, per the terms of the Franchise Agreement. Mallet Aff. ¶ 33; Franchise Agreement at 22, 28. DIW alleges damages from November 18, 2023 (30 days from the date of termination) to November 4, 2024, which amounts to 352 days. Mallet Aff. ¶ 33. The $29,163.20 figure is calculated by multiplying $168,000 by 18% per year, which equals $30,240.000 in interest per year. *Id.*; Franchise Agreement at 28. That amount is then divided by 365 days to equal $82.85 in interest per day. Mallet Aff. ¶ 33; Franchise Agreement at 28. When the per diem interest of $82.85 is multiplied by 352 days, the interest owed equals $29,163.20. Mallet Aff. ¶ 33; Franchise Agreement at 28. Therefore, the Court agrees that DIW is entitled to $197,163.20 ($168,000.00 + $29,163.20) in liquidated damages.[5]

## IV.   CONCLUSION

For these reasons, the Court will **GRANT** Plaintiff's Motion and will enter default judgment in favor of Plaintiff, against Defendants, jointly and severally, in the amount of $907,055.22 . An appropriate Order accompanies this Opinion.

Dated: April 8, 2025

*Evelyn Padin*
Evelyn Padin, U.S.D.J.

---

[5] In passing, Plaintiff states that "pursuant to section 17.4 of the Franchise Agreement, Mataji3 agreed that the non-prevailing party would 'pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement.'" Mot. at 2 (quoting Franchise Agreement). However, Plaintiff does not make any substantive argument seeking attorneys fees or costs and does not request them in its proposed order. Therefore, the issue is deemed abandoned and waived. *See Nagle v. Alspach*, 8 F.3d 141, 144 (3d Cir. 1993) (declining to address an issue "casually mention[ed] . . . in one sentence.").